UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| RIGOBERTO S. J., | Case No. 26-cv-957 (LMP/JFD) |
| Petitioner, | |
| v. | **ORDER** |
| PAMELA BONDI, *Attorney General*, KRISTI NOEM*, Secretary, U.S. Department of Homeland Security*, TODD M. LYONS, *Acting Director of Immigration and Customs Enforcement*, DAVID EASTERWOOD, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*, and WARDEN, *ERO El Paso Camp East Montana, El Paso, Texas*, | |
| Respondents. | |

---

Respondents (the "Government") have filed a declaration of compliance attesting that it has returned Petitioner Rigoberto S. J.'s property to him on February 19, 2026. *See* ECF No. 21. In accordance with the Court's February 18, 2026 order, Special Assistant U.S. Attorney ("SAUSA") Matthew Isihara has purged his contempt, so no fines will be imposed on him.

So, how did we get here? It began on February 2, 2026, when Rigoberto S. J. filed for a writ of habeas corpus. That same day, the Court entered an order requiring the Government to respond to Rigoberto S. J.'s petition by February 5, 2026. ECF No. 3; *see* 28 U.S.C. § 2243 (providing that a response to a writ for habeas corpus "shall be returned within three days"). That deadline came and went without a response from the

Government.  Therefore, on February 9, the Court granted Rigoberto S. J.'s petition, ordered him released "in Minnesota" by February 13, required the Government to "return all property to him," and ordered the Government to file a status update no later than 3:00 p.m. on February 17 certifying compliance with the order.  ECF No. 5 at 3.

None of that happened.  Instead, Rigoberto S. J.'s counsel (not the Government) informed the Court on February 17 (after the Government's deadline had passed) that Rigoberto S. J. had been released on February 12 *in Texas* (not Minnesota), and that the Government had kept his identity documents (specifically, his Minnesota Driver's License, Minnesota Instruction Permit, and Mexican Consular ID card).  ECF No. 8.  Because Rigoberto S. J. had been released in a state unknown to him without any identification, he spent the night in a shelter.  *Id.* at 1.  The next day, his counsel (not the Government) arranged for his return to Minnesota using donated flight miles.  *Id.*  Rigoberto S. J.'s counsel informed the Court of all of her efforts to get the Government to comply with the Court's orders.  ECF Nos. 8, 10-1, 10-2, 10-3.

On February 17, the Court set a hearing for the afternoon of February 18 and ordered the Government to show cause why it should not be held in contempt for failing to comply with multiple aspects of its February 9 order.  ECF No. 9.  The Court also ordered a representative of ICE to appear "who had notice of the Court's February 9 Order and is responsible for Petitioner's custody, property, and release." *Id.* at 2.

At the show-cause hearing, SAUSA Isihara and Assistant U.S. Attorney ("AUSA") David Fuller appeared for the Government.  SAUSA Isihara was the Government attorney assigned to this case; AUSA Fuller is the current Civil Chief of the U.S. Attorney's Office.

2

Scott Ladwig, a Deputy Field Office Director ("DFOD") detailed to the Twin Cities, appeared on behalf of ICE. At the hearing, it quickly became apparent that the Government had no idea what had happened in this case. SAUSA Isihara and AUSA Fuller referenced documents that they believed were filed in this case but never actually were. They admitted that DFOD Ladwig was not knowledgeable about Rigoberto S. J.'s case; in fact, DFOD Ladwig had only been made aware of this case on the morning of the hearing. And no one could definitively tell the Court where Rigoberto S. J.'s property was located.

SAUSA Isihara stated that he was assigned to this case on February 2. As the assigned attorney, SAUSA Isihara was responsible for preparing a response to the petition by February 5. He did not do so. This led to the Court granting Rigoberto S. J.'s petition, as the failure to respond forfeited any objection the Government might have had to Rigoberto S. J.'s request for relief. ECF No. 5. SAUSA Isihara admitted that he timely learned of the Court's February 9 order granting the petition when paralegals from the U.S. Attorney's Office sent him the order. But he failed to notify ICE of the Court's order, as he explained would have been the normal protocol, or to take any steps to cause the Government to comply with it.

His next interaction with this case came on February 12. At that point, Rigoberto S. J. had been unlawfully released in Texas. Rigoberto S. J.'s counsel emailed SAUSA Isihara about the Court's February 9 order and asked him to help get Rigoberto S. J. transferred back to Minnesota. ECF No. 10-3 at 1–3. He responded within minutes that "I have a few urgent matters I need to close the loop on. I'll circle back with you later this afternoon." *See id.* at 1. SAUSA Isihara never followed up.

3

Rigoberto S. J.'s counsel again contacted SAUSA Isihara on February 16, 2026, to inform him that Rigoberto S. J. had been released without his property and to inquire about how Rigoberto S. J. could get his property returned.  *Id.*  SAUSA Isihara never responded, nor took any action to look into the matter.

SAUSA Isihara admitted that the first time he did *any* substantive work on Rigoberto S. J.'s case was on the morning of February 18, while preparing for the show-cause hearing.  As of the time of that hearing, SAUSA Isihara had not filed a notice of appearance in the case.  Consequently, despite being explicitly informed of the Court's February 9 order on at least three separate occasions, SAUSA Isihara had taken no action to ensure compliance with the Court's order, notwithstanding the fact that it was his responsibility to communicate the Court's order to ICE to effectuate Rigoberto S. J.'s lawful release.  In fact, had it not been for the proactive efforts of Rigoberto S. J.'s counsel to email the order directly to ICE's El Paso general "outreach" inbox, it is unclear whether Rigoberto S. J. would have been released at all.

From the evidence before the Court at the show-cause hearing, then, it appeared that SAUSA Isihara was most at fault for the Government's continued noncompliance with the Court's February 9 order.[1]  SAUSA Isihara blamed his oversights on this case inadvertently "slipp[ing] through the cracks."  But SAUSA Isihara had notice of this case and at least

---

[1]  It is unclear whether others were also responsible for this noncompliance because the Government failed to provide a witness from ICE that had knowledge of Rigoberto S. J.'s case (which itself was in violation of the Court's February 17 order).  Even after an hour-and-a-half hearing, the Court has no understanding as to who released Rigoberto S. J. in Texas, rather than Minnesota, and without his property.

4

three chances to remedy the issue before the show-cause hearing. And the Government offered little defense to avoid contempt. Rather, the Government asked the Court to exercise its "discretion" and "good graces" based on the understaffing and oversized caseloads in the U.S. Attorney's Office. But since the beginning of Operation Metro Surge, the Government has offered that excuse to this Court again,[2] and again,[3] and again[4] (and to other judges in this district again,[5] and again,[6] and again,[7] and again,[8] and again,[9] and again[10]) to excuse its oversights and disobedience of court orders in immigration habeas cases.

Incredibly, less than two weeks ago, SAUSA Isihara was ordered to appear before this Court to explain his oversights in another case. *See Juan Carlos G. A. v. Bondi*,

---

[2]  *See Silvestre R. C. v. Bondi*, No. 26-cv-436 (LMP/JFD), ECF No. 17 (D. Minn. Jan. 28, 2026).

[3]  *See Juan Carlos G. A. v. Bondi*, No. 26-cv-941 (LMP/SGE), ECF No. 15 (D. Minn. Feb. 9, 2026).

[4]  *See Eliseo M. M. v. Noem*, No. 26-cv-255 (LMP/LIB), ECF No. 9 at 2 (D. Minn. filed Jan. 30, 2026).

[5]  *See Oscar T.-C. v. Bondi*, No. 26-cv-167 (JWB/JFD), ECF No. 34 at 2 (D. Minn. filed Feb. 3, 2026).

[6]  *See Francisco Z. G. v. Bondi*, No. 26-cv-722 (JMB/ECW), ECF No. 10 at 2 (D. Minn. filed Jan. 30, 2026).

[7]  *See Estefany J. S. v. Bondi*, No. 26-cv-216 (JWB/SGE), ECF No. 13 at 2 (D. Minn. filed Jan. 14, 2026).

[8]  *See Franklin Ismael G. R. v. Bondi*, No. 26-cv-567 (DWF/DTS), ECF No. 11 at 1 (D. Minn. filed Feb. 2, 2026).

[9]  *See Maria Mercedes T. D. v. Easterwood*, No. 26-cv-1269 (ECT/SGE), ECF No. 7 at 1 (D. Minn. filed Feb. 12, 2026).

[10]  *See Angel Johan A. S. v. Lyons*, No. 26-cv-777 (SRN/ECW), ECF No. 6 at 1 (D. Minn. filed Feb. 2, 2026).

No. 26-cv-941 (LMP/SGE), ECF No. 15 (D. Minn. Feb. 9, 2026).  Like here, SAUSA Isihara also blamed certain oversights on resource constraints within the U.S. Attorney's Office, asserting that given the massive volume of individuals being detained and transported between Minnesota and other states, it had been difficult for the U.S. Attorney's Office to keep up with the transport of individuals, to be situationally aware as to where individuals are, and to even keep ICE updated on court orders.  The Court nevertheless reminded SAUSA Isihara of the importance of timely compliance with the Court's orders.

This Court has been exceedingly patient with the U.S. Attorney's Office and has granted its attorneys (including SAUSA Isihara) grace multiple times before when disobedience came to light.  But at this point, the refrain of "understaffing" and "too many cases" has worn out its welcome, particularly when it comes at the expense of individual rights.  This Court would never allow a private attorney or litigant to rely on an "I'm too busy" excuse to justify disobedience of a court order.  The Government is no different.  *See Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").

Because the Government failed to offer any acceptable defense to its conduct, the Court found SAUSA Isihara in civil contempt of court.  SAUSA Isihara had notice of the Court's clear and specific February 9 order but took no steps to comply.  ECF No. 17; *see Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1223 (8th Cir. 2006).  SAUSA Isihara also made no argument that he was unable to comply with the Court's order.  Accordingly, civil contempt sanctions were appropriate.  After weighing (1) the character and magnitude

6

of the harm, (2) the probable effectiveness of a sanction in bringing about compliance with the Court's order, and (3) the financial resources and the consequent seriousness of the burden to the parties, the Court on February 18 imposed a $500 daily fine for each day after February 19 that Rigoberto S. J. was without his identification documents. *See Nowotny*, 470 F.3d at 1224; *see also Faegre & Benson, LLP v. Purdy*, 367 F. Supp. 2d 1238, 1249–50 (D. Minn. 2005) (imposing $500 daily contempt fine on private litigant who violated the court's order prohibiting tortious appropriation of another's identity).

As an alumna of the U.S. Attorney's Office for this District, this Court has immense respect for the dedicated attorneys of that office who live out its vital mission of doing justice. But it has become painfully clear over the past several months that the attorneys working on immigration habeas cases lack the basis resources and, in some cases, training[11] necessary to comply with judicial orders. The inability of the U.S. Attorney's Office to fulfill its duty to ensure compliance with judicial orders has real consequences on real human beings: petitioners are unlawfully left stranded thousands of miles away from Minnesota without their property (that is, if the petitioner is even timely released). Ultimately, staffing and resource allocation at the U.S. Attorney's Office is firmly within the Executive's control. But it is this Court's business to ensure that its orders are obeyed and not ignored. Administrative burden has never been a reason to sacrifice the constitutional and statutory rights of individuals, *see Stanley v. Illinois*, 405 U.S. 645, 656–

---

[11] SAUSA Isihara stated at the show-cause hearing that prior to joining the U.S. Attorney's Office as a SAUSA last month, he had not practiced in federal court. Since joining the U.S. Attorney's Office, he has been assigned nearly 130 cases.

7

58 (1972), and this Court is not about to go down that road now.  To do so would essentially allow the federal government to dictate when it is convenient for it to respect the rights of individuals—citizens and noncitizens alike.

One may wonder: why does it matter if the Government failed to return some identification documents?  Federal courts have long recognized that identification documents are not trivial pieces of paper, but instruments of liberty and personhood.  As the Supreme Court has explained, the possession of a driver's license "may become essential in the pursuit of a livelihood." *Bell v. Burson*, 402 U.S. 535, 539 (1971).  Any Minnesotan who relies on a car to get to work, run errands, and take their kids to school certainly knows this to be the case.  And having one's identification documents is central to modern life: without them, a person may be unable to work, to travel, to rent a home, to access medical care, to open or access a bank account, or even to prove who they are to the Government.[12]  Here, the Government dropped Rigoberto S. J. into a city unknown to him without the one thing he would generally need to secure lodging and travel home: his ID.

So, where do we go from here?  A final few words to SAUSAs and AUSAs appearing before this Court in immigration habeas cases.  The Court empathizes with the challenging situation they are in.  But going forward, the goal should be "100% compliance with judicial orders."  *Kumar v. Soto*, No. 26-cv-777 (MEF)(AME), 2026 WL 457398,

---

[12]    That is not to say that the Government is categorically barred from retaining an immigrant detainee's identification documents.  The Government is free to argue that some regulatory or statutory provision authorizes them to do so.  *Cf. Silvestre R. C. v. Bondi*, No. 26-cv-386 (LMP/JFD), ECF No. 18 (D. Minn. Jan. 28, 2026).  The Government did not do so here (indeed, it provided no response to the petition), so it must abide by the Court's order requiring the return of Rigoberto S. J.'s property.

at *2 (D.N.J. Feb. 17, 2026).  If, however, a SAUSA or AUSA becomes aware that a judicial order was or is about to be violated, the SAUSA or AUSA should promptly explain to the Court what is happening, the reason for the violation, and the particular steps that the SAUSA or AUSA is taking to fix it.  The Court will look favorably on such submissions and will generally refrain from imposing sanctions when it appears that the SAUSA or AUSA is taking appropriate corrective action to ensure compliance.  What the Court will not tolerate is what happened here: disobedience and radio silence from the Government.

Dated: February 20, 2026                    *s/Laura M. Provinzino*
                                                            Laura M. Provinzino
                                                            United States District Judge